# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Simar | Civil Action No. 15-CV-01950 |
| versus | Magistrate Judge Carol B Whitehurst |
| Tetra Technologies Inc et al | By Consent of the Parties |

## RULING AND ORDER ON MOTION TO DISMISS

Before the Court is a Motion To Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Island Operating Company, Inc. ("Island") [Rec. Doc. 122], an Opposition Memorandum filed by Tetra Technologies, Inc. ("Tetra") and Maritech Resources, Inc. ("Maritech") (collectively referred to as "Tetra/Maritech") [Rec. Doc. 127], Island's Reply Memorandum [Rec. Doc. 138] and a Sur-Reply filed by Tetra/Maritech [Rec. Doc. 154].

### *I.    Background*

This action arises from an injury sustained by Plaintiff, Wendell Simar, employed as a rigger by Chicago Bridge and Iron Company (CB&I), when a swing rope system on a platform designated as Vermilion Block 250 C ("VR 250C") failed. Plaintiff, as part of CB&I's construction crew, was hired by Maritech and supervised by Tetra to refurbish parts of the platform in order to make it safe for the platform's oil and gas wells to be plugged and abandoned, decommissioned by the Department of Interior and ultimately removed from the OCS.

Plaintiff sued Tetra/Maritech[1] as the owner/operator of the platform, claiming it was liable for damages caused by the failure of the swing rope. Tetra/Maritech alleged that the accident was caused by the fault of the Plaintiff and his employer, CB&I, who were contracted by Maritech to inspect the platform.[2] Tetra/Maritech filed a Third Party Complaint against Island, alleging in the alternative that Island was contractually obligated to inspect the platform and notify Maritech of any repair or reconditioning work required and that Island breached its contractual obligation. *R. 109, ¶ 10.* Thus, the allegations in the Third Party Complaint at issue in this Motion allege a breach of contract claim against Island.

Island filed the instant motion primarily contending that (1) the Master Service Agreement ("MSA") between Maritech and Island contains no provisions that support Tetra/Maritech's allegations, and (2) the Contract Operating Agreement ("COA") between Maritech and Island has no application to VR 250C, the platform in this case. Island attached the MSA and the COA to its motion.[3] *R. 122-3, -4.* Island also attached the unsworn declaration of Gregg H. Falgout, Island's President and CEO who made certain statements as to the applicability of the MSA and the COA

---

[1] Maritech is a subsidiary of Tetra. *R. 127*.

[2] Tetra/Maritech's claims against CB&I were dismissed on summary judgment on September 26, 2017, based on the Louisiana Oilfield Anti-Indemnity Act. *R. 87, 88.*

[3] Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim. In so attaching, the documents merely assist the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

at issue to work Island performed on the VR 250C. *R. 122-5*. In Tetra/Maritech's opposition to Island's motion, Maritech attached the May 8, 2018 deposition of Charles Rougeau, consultant for GMS Contract Services, LLC, the company assisting Maritech in decommissioning operations. *R. 127-1*. Tetra/Maritech also attached the May 8, 2018 deposition of Lonnie Whitfield, vice president of land for Maritech, who was responsible for BSEE annual review and regulatory compliance. *R. 127-2*.

In a January 31, 2019 telephone conference with the parties, the Court ruled the Falgout declaration was outside the pleadings and not properly considered in the context of a Rule 12(b)(6) motion. *R. 143*. The Court gave Island the option of converting the instant motion to one for summary judgment under the legal standard of Rule 56 or to withdraw the declaration. *Id.* Island made an oral motion to withdraw the declaration of Falgout, which the Court granted. *R. 144*. The Court also granted Tetra/Maritech's request for additional briefing of the motion as one for failure to state a claim, without its reliance on the depositions attached to its first opposition brief. In its opposition to the motion to dismiss, Tetra/Maritech argues that the allegations in its "Third Party Complaint taken as true, along with the [MSA and COA], raise a reasonable expectation that discovery will reveal relevant evidence of each element of the [breach of contract] claim." *R. 154, p. 1*.

## II. Law and Analysis

### A. *12(b)(6) Motion To Dismiss Standard*

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is properly granted when a defendant attacks the complaint because it fails to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) When considering such a motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000), accept all well-pleaded facts as true, and view the facts in a light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," *Id.* at 555, and "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* "While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id. See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* at 678. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

### B. *Whether Tetra/Maritech's Third Party Complaint Against Island Should be Dismissed*

#### 1. *Island's Obligations Under the MSA and COA*

Tetra/Maritech alleges in the Third Party Complaint that Island "was the contract lease operator, with contractual responsibilities that included performing monthly MMS platform inspections and ensuring the production facility was operated in a safe manner." *R. 109, ¶ 7*. It further alleges that "under the terms of the

MSA and COA ... Island was responsible for maintaining safety equipment, performing monthly MMS platform inspections, monitoring and maintenance reports for all mechanical equipment, and insuring equipment and work areas were maintained in a clean and workmanlike manner. Island was required to notify Maritech if any repair or reconditioning work was required...." *Id. at ¶8*.

While Island concedes that it has an MSA with Maritech and that it has performed services for Maritech under the MSA "from time to time," Island argues that the MSA is unenforceable because the scope of the COA does not apply in this case. *R. 122-4*. Citing the first page of the COA under the heading "Recitals" Island states that the COA applies only to those platforms listed in Exhibit A—"South Pass 50 and 78 facilities." *Id., Exh. A*. Island further notes that Paragraph 12 of the COA states, "This agreement may only be modified by a writing signed by authorized representative of Contractor and Operator." *Id, at ¶ 12*.

A master service agreement is a blanket contract (whether or not so labeled) which covers any kind of work the independent contractor might be requested to perform for the principal and which renews automatically or continues in effect until either party gives notice of termination. *Doucet v. Gulf Oil Corp*., 783 F.2d 518, 526 (5th Cir. 1986). Blanket contracts set forth the terms of performance and payment for any and all work and pay the parties might exchange in the future. *Burnham v. Sun Oil Co*., 618 F.Supp. 782, 785 (W.D.La.1985). A master service agreement usually

refers to the type of work contemplated but does not identify a determinate time or place of performance. *Page v. Gulf Oil Corp.*, 775 F.2d 1311, 1315 (5th Cir.1985).

In *Page*, the Fifth Circuit considered a master service agreement which did not govern a "specific, terminable performance," but rather contemplated that it would become effective only upon Gulf's notice or request for any of the described services. The court concluded that the master service agreement was not a binding contract but "merely sets out the rules of the game in the event the parties decide to play ball." *Page,* 775 F.2d at 1315.

As in *Page*, the 2001 MSA—standing alone—is not a binding contract between Maritech and Island. *Hebert v. Kerr-McGee Corp.*, 618 F. Supp. 767, 772–73 (W.D. La. Aug 22, 1985) ("[A] master service agreement does not itself bind the parties to perform any services. It merely sets forth their agreement to abide by certain terms should they contract to perform services in the future."). The MSA provided only the framework for subsequent contracts resulting from "written or verbal purchase orders." *See Matte v. Zapata Offshore Co. v. Timco, Inc.*, 784 F.2d 628, 630 (5th Cir. 1986). Here, the MSA "sets forth [Maritech and Island's] agreement to abide by certain terms should they enter into contractual relations "from time to time."

The four corners of the January 10, 2002 COA[4] clearly state that Maritech "is the operator of certain oil and gas leases, including the platforms more fully described on Exhibit A." Exhibit A specifically names "South Pass 50 and 78 facilities" and states that they are to be visited three days per week by helicopter. *R. 122-4, Agreement.* The COA further states,

> 1. <u>Duties of Contractor</u>. [Island] agrees to perform duties relating to the Platform as are ordinarily required in the regular course of operating such facilities.
>
> \* \* \*
>
> 3. <u>Repairs</u>. [Island] shall not be responsible for ay repairs of any reconditioning work upon the Platform, but [Island] shall use reasonable care in undertaking to notify [Maritech] of the need for any such repair of [*sic*] reconditioning work on morning report form.

*Id.*

Tetra/Maritech suggests that the language in the COA could be interpreted more broadly as "*including* the platform(s)" described on Exhibit A, meaning that other platforms could also be part of the contract. The Court disagrees. Pursuant to La. Civ. Code art. 2046, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The plain language of the contract and the specific references to the platforms in terms of duties and compensation controls the COA.

---

[4] The COA provides that the law governing the Agreement and any causes of action arising thereunder shall be the state in which the platform is located or adjacent to—in this case Louisiana.

It is axiomatic that a breach of contract counterclaim such as this requires Tetra/Maritech to show that a contract existed. While Tetra/Maritech acknowledges that Exhibit A to the COA does not indicate a connection to the VR 250C, it argues "the claims should stand because the facts raise a reasonable hope or expectation that discovery will reveal evidence that the parties agreed that Island was to perform such duties as are described in the COA at VR 250C." In other words Tetra/Maritech argues the claims should stand because it may find the existence of a contract during discovery. Tetra/Maritech, however, ignores the fact that alleging breach of contract because there might be a contract is the exact kind of claim Rule 12(b)(6) intends to prohibit. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000) ("In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations. We will thus not accept as true conclusory allegations or unwarranted deductions of fact."). In the Third-Party Complaint Tetra/Maritech fails to allege the existence or knowledge of any contract, agreement or order, written or verbal, stating that Island was to perform the duties outlined in the MSA and COA on the VR 250C. Thus, Tetra/Maritech has failed to allege any specific facts to plausibly support the breach of contract claim against Island with regard to the VR 250C.

*2. Enforceability of Island's Duties*

Island further contends that the duties designated to Island under the COA are unenforceable because the BSEE regulations prevent these duties from being contractually transferred to anyone other than Maritech or "its designated person or agent." Island requests that the Court apply the ruling in *Island Operating Company, Inc. v. Jewell*, 2016 WL 7436665 (W.D.La. Dec. 23, 2016). In *Jewell*, BSEE issued a citation for failure to comply with administrative regulations promulgated under OCSLA to the lease holder as well as to Island, the contractor. The court held that as a non-leaseholder, Island had no duty related to environmental and safety standards, and, therefore could not be subject to a penalty or fine.

There has been no citation issued to Island by BSEE in this case. Nor has Maritech alleged that the MSA or COA transferred any responsibility or duty owned by Maritech to maintain VR 250C onto Island. Rather, the terms in both the MSA and COA appear to be those that Island has been operating under since August 10, 2001 and January 10, 2002, at least with regard to platforms SP 50 and SP 78. The Court finds that *Jewell* is not relevant to the inquiry before it, and therefore declines to consider Island's argument.

*3. The Louisiana Oilfield Anti-Indemnity Act ("LOAIA")*

Alternatively, Island contends that its contractual obligations to indemnify Tetra/Maritech are voided by LOAIA. LOAIA, La. R.S. 9:2780.1, prohibits

indemnification of a party for its own negligence. The Third Party Complaint prays that Island be declared liable to Tetra/Maritech for indemnity, or alternatively contribution in proportion to <u>Island's own fault</u>. Accordingly, LOAIA does not apply to the Third Party Complaint and Island's contention is moot.

*4. Tort Contribution To Tetra/Maritech*

Island also contends that the Third Party Demand states a claim for tort contribution which is precluded by Louisiana comparative fault principles as provided by *Stelly v. Guidroz*, 2018 WL 1702849 (W.D.La, 2018).[5] In its Opposition Memorandum Tetra/Maritech represents and confirms that its claim against Island is "clearly based on breach of contract" and is not "premised solely on Island's potential tort liability." *R. 127, p. 14*. Thus, any claim in the Third Party Complaint for tort contribution is moot.

### III. *Conclusion*

The Court will deny Island's claim that Tetra/Maritech's claims are legally unenforceable under *Island Operating Company, Inc. v. Jewell*. As to Island's remaining alternative claims, based on the foregoing, including Tetra/Maritech's representations to the Court that Island's claims are not applicable to the Third Party

---

[5] In *Stelly*, the court explained that the doctrine of contribution permits a tortfeasor who has paid more than his share of a solidary obligation to seek reimbursement from the other tortfeasors. La. Civ. C. art 2324 was amended in 1996 "to eliminate solidary liability, except where the tortfeasors conspire to commit an intentional or willful act. Non-intentional tortious acts are now considered joint and divisible and each joint tortfeasor is liable only for his own actions. The *Stelly* court held that because there were no allegations that the defendants conspired to commit the plaintiff's alleged wrongful acts, the doctrine of contribution did not apply. *Stelly*, 2018 WL 1702849, at *6.

Complaint, Island's LOAIA claim as to indemnity and Island's claim as to tort contribution are denied as moot.

As to Island's primary argument—that Tetra/Maritech has failed to state a claim against Island for breach of contractual duty—the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc*., 677 F.2d 1045, 1050 (5th Cir. 1982). Short of granting a motion to dismiss, a court may grant the party leave to amend the complaint. *See Carroll v. Fort James Corp*., 470 F.3d 1171, 1175 (5th Cir. 2006). Accordingly, the Court will grant Tetra/Maritech leave to file an amended third party complaint, if it chooses to do so, to sufficiently allege a breach of contract claim against Island.

Accordingly,

**IT IS ORDERED** that Island's Motion To Dismiss [Rec. Doc. 122] is DENIED WITHOUT PREJUDICE as to the Third Party Complaint's breach of contract claim. Tetra/Maritech may file a motion for leave to amend the Third Party Complaint, if it so chooses, to sufficiently allege a breach of contract claim against Island within twenty-one (21) days of this date. In the event no such amendment is filed, the Court will grant Island's Motion To Dismiss Tetra/Maritech's third party claim for breach of contract.

**THUS DONE AND SIGNED** this 1st day in March, 2019.

                                                                                                       */s/ Carol B. Whitehurst*
                                                                                                       **CAROL B. WHITEHURST**
                                                                                                       **UNITED STATES MAGISTRATE JUDGE**