# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Simar | Civil Action No. 15-CV-01950 |
| versus | Magistrate Judge Carol B Whitehurst |
| Tetra Technologies Inc et al | By Consent of the Parties |

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by Plaintiff, Wendell Simar, [Rec. Doc. 130] and an Opposition Memorandum filed by Intervenors, Chicago Bridge and Iron Company ("CB&I") and American Longshore Mutual Association, Ltd. ("ALMA") [Rec. Doc. 147]. Also before the Court is a Cross Motion For Summary Judgment filed by Intervenors, CB&I and ALMA [Rec. Doc. 148] and an Opposition Memorandum filed by Plaintiff [Rec. Doc. 155]. For the reasons that follow, the cross motions for summary judgment will be denied.

### *I. Background*

Plaintiff, Wendell Simar, was employed by CB&I on June 24, 2014, when he was involved in an accident that resulted in injuries to his lower back. Plaintiff filed suit against Tetra Technologies, Inc. ("Tetra") and Maritech Resources, LLC ("Maritech") as the owner/operator of the platform (referred to as "Tetra/Maritech"), alleging that the accident was caused by the fault of Tetra/Maritech.

Plaintiff received indemnity benefits and medical expenses from CB&I and its workers' compensation carrier, ALMA, pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §901, *et seq*. CB&I and ALMA intervened in this lawsuit (sometimes referred to as "Intervenors") claiming a right to reimbursement of all LHWCA benefits paid to and/or on behalf of Plaintiff, together with all expenses, attorney's fees, costs, and the present value of all future benefits payable to Plaintiff, if any.

Plaintiff filed a motion for summary judgment, *R. 130*, contending that pursuant to the written Master Service Agreement ("MSA") dated March 22, 2013, between Tetra and CB&I,[1] both parties: (1) contractually agreed to defend and indemnify the other from claims for injury brought by their respective employees; (2) agreed to secure certain enumerated insurance coverages, including Longshore and Harbor Workers' Compensation coverage; and, (3) ensure that all insurance certificates/policies contain a provision waiving any and all rights of reimbursement/subrogation by the respective carriers against the other contracting party, its agents, servants, invitees, employees or co-lessees, affiliated companies, contractors, subcontractors and their insurers. *R. 130-2*.

---

[1] Effective February 10, 2014, the MSA was expressly amended "to be between Tetra, its subsidiaries and affiliates, and CB&I or CB&I Offshore Services, Inc. and any and all references to Shaw or 'Contractor' shall here forward mean CB&I or CB&I Offshore Services, Inc." *R. 130-3, Amendment No. 1 to MSA*.

Plaintiff argues in its motion that Intervenors have no right to reimbursement of LHWCA benefits paid to and/or on behalf of Plaintiff, as a matter of law, because there exist valid, enforceable defense and indemnity and waiver of subrogation agreements in this matter. Plaintiff moves the Court to dismiss CB&I and ALMA's intervention at Intervenor's cost.

Intervenors filed an opposition memorandum, *R. 147*, and cross motion for summary judgment, *R. 148*, opposing Plaintiff's motion. They argued that none of the applicable contracts result in Intervenors' waiver of their subrogation rights, and their intervention should be maintained.

## *II. Law and Analysis*

### A. *The Summary Judgment Standard*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex*., 560 F.3d 316, 326 (5th Cir. 2009). A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252.

3

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact. *Washburn*, 504 F.3d at 508. All facts and inferences are construed in the light most favorable to the nonmoving party. *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. *Norwegian Bulk Transport A/S v. Internat'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex*, 477 U.S. at 325. The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

### B. Whether CB&I and ALMA Waived Subrogation Against Plaintiff's Worker's Compensation/LHWCA Recovery

Tetra and Shaw Global Offshore Services, Inc. ("Shaw") entered into an MSA dated March 22, 2013. *R. 130-2, 148-3*. The MSA was amended on February 10,

2014 to replace Shaw with its successor, CB&I. *R. 130-3, 148-4.* The parties agree that the MSA between Tetra and CB&I contains contractual defense and indemnity obligations and requirements for insurance and waivers of subrogation. *R. 130-2, 148-3*. The MSA stated in pertinent part that Contractor (CB&I) shall obtain and maintain during the term of the Agreement certain types of insurance, including workers' compensation and employers' liability insurance with coverage for statutory workmen's compensation in compliance with the jurisdiction where the work is performed and also for coverage under the Longshore and Harbor Workers' Compensation Act (sometimes collectively referred to as "worker's compensation"). (*R. 130-2, 148-3*, p. 8, § 10.1). The MSA also stated:

> All policies, except worker's compensation policies hereinabove, shall, but only to the extent of the indemnity and release obligations expressly assumed by Contractor herein, name Company Group as an additional insured, with such additional insured coverage including coverage for the sole, joint or concurrent negligence of the additional insured, with such insurance being primary to any insurance of Company Group that may apply to any such occurrence accident of claim, and shall contain full waivers of subrogation in favor of Company Group.

*R. 130-2, 148-3, p. 9, §10.4*.

Pursuant to the terms of the MSA, a Certificate of Membership No. ALMA00644-04 was issued, effective from February 1, 2014 to February 1, 2015, indicating that CB&I obtained worker's compensation and LHWCA coverage through ALMA. *R. 148-6.* Effective February 10, 2014, a General Change Endorsement, #2014-001, was issued which amended the Certificate of

5

Membership—changing the Member's Name from Shaw to CB&I. *R. 148-7, p. 1*. Also, a Waiver of Subrogation Endorsement issued by ALMA, effective 12:01 a.m., February 1, 2014, formed part of Certificate No. ALMA00644-04. *R. 148-7, p. 2*. The Waiver of Subrogation Endorsement stated:

> The Association waives its rights of subrogation against other individuals, firms, organizations or corporations but only when required by written contract and only to the extent required by that contract. This waiver shall apply only in respect to the specific contract existing between the Member and such other operations of such individual, firm, organization or corporation in which the Member has no contractual interest.

*Id.*

Also pursuant to the MSA, a Certificate of Liability Insurance ("Certificate") was issued identifying Tetra as the Certificate holder. *R. 130-4, 148-8, Certificate of Liability Insurance*. The Certificate indicates the effective date of the Insurance is February 1, 2014. The Certificate states, "If subrogation is waived, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsements." Page 2 of the Certificate of Insurance lists "Workers Compensation/ Employer's Liability" and "U.S. Longshore and Harbor Workers": Blanket Waiver of Subrogation." *Id.*

In his motion, Plaintiff contends that, pursuant to the March 22, 2013 MSA, both parties contractually agreed to secure insurance coverage, including worker's compensation coverage and ensure that all insurance policies contain a waiver of all rights of reimbursement/subrogation. In support of his position, Plaintiff cites the Certificate of Insurance providing an endorsement to ALMA's Policy for "a blanket waiver of subrogation."

The Intervenors point to the specific language in section 10.4 of the March 22, 2013 MSA which refers to CB&I's coverage obligations of Tetra as an additional insured, including waivers of subrogation. Intervenors argue that the lead-in statement in section 10.4, "All policies, except workers compensation policies," negates the waiver of subrogation obligation as to CB&I's worker's compensation insurance. They argue that the language of the March 22, 2013 MSA controls despite the representations in the Certificate of Insurance and the Waiver of Subrogation Endorsement effective February 1, 2014.

Plaintiff alleges in his Complaint, and Intervenors do not dispute, that Louisiana law applies in this case. *R. 1, 106.* Louisiana law generally upholds waivers of subrogation and interprets them under the same rules applied to other contracts. *See, e.g., Fontenot v. Chevron U.S.A. Inc.*, 676 So.2d 557, 565 (La. 1996); *Beslin v. Anadarko Petroleum Corp.*, 175 So. 3d 1134, 1136-40

7

(La. 3d Cir. 2015). When the language of a contract is clear and unambiguous, a reasonable interpretation consistent with the obvious meaning and intent of the contract must be given. *Beslin*, 175 So. 3d at 1136.

Intervenors initially argue that section 10.4 of the MSA *excludes* the worker's compensation policy from the terms of that section, but then argue that the terms of section 10.4 *apply* to the worker's compensation policy. The Court finds that the language in section 10.4 is neither clear nor unambiguous. Intervenors interpret the language to mean that the term—"except worker's compensation"—completely excludes the worker's compensation policy from the terms of the section, including the provision requiring "full waivers of subrogation." The language of section 10.4, however, can also be interpreted as applying only to CB&I's indemnity and release obligations related to naming Tetra as an additional insured, and not the waiver of subrogation requirement as it relates to the worker's compensation obligation. In addition, the terms of the MSA were originally drafted on March 22, 2013 between Tetra and Shaw, while the Certificate of Insurance and Blanket Waiver of Subrogation Endorsement which specifically refers to CB&I's obligation to secure worker's compensation liability, are dated February 1, 2014.

The Court finds a genuine issue of material fact exists as to whether or not the MSA precluded the waiver of subrogation under the worker's

compensation policy such that Plaintiff and Intervenors are not entitled to summary judgment on the issue of subrogation.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the Motion For Summary Judgment filed by Plaintiff, Wendell Simar, [Rec. Doc. 130] is **DENIED**.

**IT IS FURTHER ORDERED** that the Cross Motion For Summary Judgment filed by Intervenors, Chicago Bridge and Iron Company and American Longshore Mutual Association, Ltd., [Rec. Doc. 148] is **DENIED**.

**THUS DONE AND SIGNED** this 1st day in April, 2019.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**