**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **Simar** | **Case No. 6:15-cv-01950** |
| **Versus** | **Magistrate Judge Carol B Whitehurst** |
| **Tetra Technologies Inc et al** | **By Consent of the Parties** |

## ORDER ON MOTION FOR ATTORNEY'S FEES

Before the Court is Motion For Attorney's Fees Cost and Expenses of Intervenors, Errol Cormier and Errol L. Cormier APLC's (collectively "Cormier") [Rec. Doc. 183], a Brief Opposing Motion For Attorney's Fees filed by Joseph F. Gaar, Jr. ("Gaar") [Rec. Doc. 185] and Cormier's Reply thereto [Rec. Doc. 188].

## I.     PROCEDURAL BACKGROUND

Wendell Simar ("Plaintiff") hired Cormier as his attorney on July 21, 2014 to represent him in connection with an accident and injury that occurred on June 24, 2014, while he was employed as a rigger on an offshore platform. Cormier and Plaintiff executed a Contingency Fee Agreement on July 21, 2014 that provided compensation to Cormier in the amount of one-third  (33 1/3%) of the aggregate recovery  if Plaintiff's claims were settled prior to filing suit and forty (40%) percent if recovery was obtained after a lawsuit was filed. Plaintiff's lawsuit in this case was filed on June 23, 2015.

In an Affidavit dated June 19, 2019, Plaintiff states that on February 17, 2017, he terminated the services of Cormier expressing his dissatisfaction with Cormier's representation, in particular his failure to bring any partial or full resolution to the case. *R. 185-3, Plaintiff's Aff.* On the same day, Plaintiff retained Joseph F. Gaar, Jr., APLC, as his new attorney. *Id.* Gaar enrolled in this action as counsel for Plaintiff on March 15, 2017. *R. 49*. Cormier filed a Complaint in Intervention on March 16, 2017. *R. 52*.

On May 14, 2019, Plaintiff and the defendants and/or intervenors in this action reached an amicable resolution in this case. The settlement did not include Cormier's intervention claiming attorney's fees and expenses prior to March 20, 2017. Therefore, on June 5, 2019, the Court ordered Cormier on or before June 14, 2019, to "file a motion for attorney's fees and costs complete with billing records and supporting affidavits outlining and documenting the hourly rates and time incurred in the representation of this action before March 20, 2017." *R. 182*.

## II.    LAW AND ANALYSIS

Louisiana courts have long approved of the contingent fee contract to compensate attorneys. *O'Rourke v. Cairns,* 683 So.2d 697, 700 (La.1996). Contingency fee contracts, like all other attorney fee contracts, are subject to review and control by the courts—most notably for reasonableness. Id. (citing Model Rules of Professional Conduct Rule 1.5(a)).

Under Louisiana law, when two attorneys provide legal services to the same client on a contingency-fee basis and one attorney is discharged before the case is resolved, the client is obligated to pay only one contingency fee that the court allocates between the attorneys. *Saucier v. Hayes Dairy Products, Inc.*, 373 So.2d 102, 118 (La.1979). The amount of the fee is "determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed." *Id*. And the apportionment of the fee between the attorneys is based on the factors listed in Rule 1.5 of the Louisiana Rules of Professional Conduct, which together are directed at assessing the reasonableness of a fee. *See id*. at 116, 118. The factors (commonly known as "the *Saucier* factors") include, *inter alia* "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;" "the amount involved and the results obtained;" and "the nature and length of the professional relationship with the client." La. R. Prof'l Conduct 1.5; *accord Saucier*, 373 So.2d at 116. The purpose of applying these factors is to ensure that the fee is divided "according to the respective services and contributions of the attorneys for work performed and other relevant factors." *Saucier* at 118. An attorney's representation must "advance [the] client's case" and have some "productive value to [the] client" in order for the attorney to recover any part of the applicable

contingency fee. *See City of Alexandria v. Brown*, 740 F.3d 339, 351–52 (5th Cir.2014).

If the first attorney was discharged without cause, then the application of the *Saucier* factors marks the end of the analysis. *Id*. at 118. If, however, the first attorney was discharged for cause, then the court must next "consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel would receive after the *Saucier* allocation." *O'Rourke v. Cairns*, 683 So.2d 697, 704 (La.1996). Here, Plaintiff contends he discharged Cormier for cause.

## A.  CLAIM FOR ATTORNEY'S FEES

### 1. *Discharge For Cause*

Under Louisiana law, a finding of discharge for cause does not simply depend upon a finding that the Rules of Professional Conduct were violated. *Osborne v. Vulcan Foundry, Inc*., 699 So.2d 492, 497 (La. App. 4 Cir. 1997). Rather, Louisiana courts look to whether the client's confidence was eroded by the actions or inactions of the attorney. *See, e.g., O'Rourke v. Cairns*, 683 So.2d 697, 703 (La. 1996).

In his Motion, Cormier argues that "no compelling argument can be made that he was discharged for cause." He contends that after Plaintiff's surgery was approved in February 2017, Plaintiff left a voice mail stating that he would "take the $75,000" offer to settle his worker's compensation case. Contrary to Cormier's

4

contention, Plaintiff stated in his Affidavit, executed on June 19, 2019, that during the 2 1/2 years as his attorney, July 1, 2014 to February 17, 2017, Cormier "did not talk [with him] much on the phone or in person" and "when he did ... could not tell [him] that any progress and results had been made." *R. 185-3*. A failure to communicate justifies a "for cause" termination. *O'Rourke v. Cairns*, 683 So.2d 697 (La. 1996).

As stated by Plaintiff and confirmed by the record, Cormier did not tell him that any progress had been made in 2 ½ years because virtually none had been made on Plaintiff's third party claim. As to progress in the third party action, Cormier does not dispute that when he was terminated and Gaar replaced him, Cormier had conducted and received some discovery but the only progress that was completed and definite was that Plaintiff's deposition had been taken by the defendants. He had performed little or no discovery on key defendants and had taken no liability depositions.[1]

In his motion, Cormier correctly distinguishes his work on Plaintiff's third party claims (the instant case) from his work on the LHWCA case. This because attorney's fees for LHWCA services are subject to approval under 33 U.S.C. § 928

---

[1] For example, Gaar notes that Cormier had not taken the liability depositions nor reviewed the documents necessary to discover and prove that the platform owner defendant had failed to inspect and maintain the rope swing that broke and caused Plaintiff's injuries. Gaar further notes that he took at least six (6) depositions in the third party tort case.

of the LHWCA by the ALJ, Board, or a court before whom the LHWCA services are performed.

The LHWCA provides that an employer is responsible for the claimant's attorney's fees where the claimant utilizes the services of an attorney who is successful in the prosecution of his claim. 33 U.S.C. § 928. Under § 928(e), all fees for Longshore work must be approved by an Administrative Law Judge; to accept an unapproved payment would be a *criminal offense*. *Id.* at § 928(e) (emphasis added). Moreover, the Contingency Fee Contract between Cormier and Plaintiff was for "tort claims for damages" and Plaintiff's LHWCA claims are not tort claims. *See Ayers S. S. Co. v. Bryant*, 544 F.2d 812, 814 (5th Cir. 1977) (The court has neither the authority nor the competence to ascertain what fees were to be awarded by the Administrative Law Judge.... Hence, we will only award fees for the work of counsel which was directly related to our review.).

While Cormier cites his work toward a settlement of Plaintiff's LHWCA case as supporting his claim for attorney's fees in the third party case, the Court cannot consider Cormier's efforts for LHWCA services because they are unrelated to Plaintiff's third party tort claim.[2] Thus, after fully considering the entire record, the

---

[2] Gaar asserts that Cormier failed to discover a blanket waiver of subrogation contained in the insurance certificate for the LHWCA carrier and language in the MSA contract that made it necessary for the intervenor to waive its subrogation lien. By bringing the subrogation argument to the forefront through motion practice, Garr "obtained a pivotal court ruling that was essential to a later successful resolution of the case" in that the LHWCA carrier agreed to waive a substantial part of the LHWCA lien. *R. 185, p. 10.*

Court finds that Plaintiff terminated Cormier's services for just cause, as provided in Plaintiff's Affidavit.

### 2. Application of the Saucier Factors

Having determined that Cormier was terminated for cause, the Court must next implement the modified *quantum meruit* analysis articulated in *O'Rourke. Id.*, 683 So.2d at 702 (The process of applying the *Saucier* factors while considering the record evidence has been termed *quantum meruit*.). In a case of discharge with cause of an attorney retained on contingency (as in this case), the Court "should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. *O'Rourke*, 683 So.2d at 704. The Court should then allocate the fee between or among discharged and subsequent counsel based upon the *Saucier* factors. *Id.* Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the *Saucier* allocation. *Id*.

Initially, attorney Gaar disputes Cormier's contention that Plaintiff owes a contingency fee of 40% based on his original contract with Plaintiff. Gaar cites his contract with Plaintiff as well as his own Affidavit stating that Plaintiff's decision to settle his case was based on paying only a 35% contingency fee. *R. 185, Exh.2, Aff. Of Gaar.* The Court finds that 35% is the "highest ethical contingency percentage to

which the client contractually agreed." Thus, the Court will apply the *Saucier* factors to determine what share of the 35% fee should be awarded to Cormier.

Given the *Saucier* factors, particularly helpful are the factors concerning the experience and skill of the lawyer, the results obtained, and the novelty and difficulty of the questions involved. *O'Rourke*, 683 So.2d at 704. Cormier submits that he represented Plaintiff for approximately 31 months and spend 88 hours on his case. He states that a large part of his work was on Plaintiff's LHWCA case. Cormier states that the work he performed on the third party suit against the defendants is highlighted on his Invoice of billing entries—the time he spent on the LHWCA compensation case is not highlighted. *R. 183, p. 4.* He contends that the highlighted hours for his work on the instant case totals 88 hours.

Gaar disputes several of the highlighted entries contending they are actually related to the LHWCA case. Upon review of Cormier's Invoice of billed hours and relying on his own distinction between his work on the third party case verses Plaintiff's LHWCA case, *R. 183*-3, the Court finds that Cormier's first entry dated 12-12-2016 reflects his time spent on Plaintiff's deposition in the LHWCA case. Cormier's billings for Plaintiff's deposition in the third party case are reflected in his entries dated 10-3-16.  Subtracting the 2.25 hours for the LHWCA deposition reduces the total hours from 88 to 85.75 hours which Cormier expended on

Plaintiff's third party tort action. Gaar's work for 27 months on the third party claim totaled more than 275 hours.

While the majority of Cormier's entries constitute brief, 15 minute (.25) encounters with Plaintiff's case, the only work performed by Cormier to advance the third party litigation consists of: meeting with an expert and Plaintiff related to the accident; drafting the Complaint for Damages; reviewing Court related documents; reviewing and/or completing discovery requests from defendants; reviewing certain potential evidence; preparing for and representing Plaintiff at his deposition and scheduling Plaintiff's surgery. The Court estimates that only about one-half of Cormier's entries apply to this work, the other one-half involve office administrative-type entries of 15 minutes (.25) each. On the other hand, Gaar's Affidavit entries represent actual litigation work that resolved the case. The Court further finds that a swing rope injury on the OCSLA is either novel nor difficult; however, the motion practice related to the indemnity issues in the contracts required knowledgeable experience and research in order to file the necessary motions to the Court. Only Gaar addressed the indemnity issues. Cormier did not perform any research nor engage in any motion practice. He did not forego any work to represent Plaintiff and did not experience any pressing time limitations.

Based on the foregoing, the Court finds that Cormier performed substantially less services in this case than successor counsel. The entirety of Cormier's hourly

entries indicate that Cormier spent no more than half of the time he entered performing substantive work on the third party tort case. More significantly, Cormier's limited work did not play a significant part, if any part at all, in the settlement of Plaintiff's third party claims by Gaar. Therefore, under the Saucier analysis, the Court finds Cormier's contribution to be no more than 15 percent.

The *O'Rourke* analysis, however, is not complete. The Court must next analyze the nature and gravity of the reasons for which the client discharged Cormier. See *O'Rourke,* 683 So.2d at 704. Considering Cormier's disproportionate concentration on the LHWCA case for 2 ½ years—to no avail, and his failure to keep his client advised of the progress of the third party suit, as well as effectively discounting any development of the third party tort claim the Court finds that "the nature and gravity" of cause should be discounted by an additional 25%.

The attorney's fees in this case are $271,250.00 (35% of the total recovery of $775,000). The Court finds that, Cormier is entitled to recover 15% of the $271,250.00, or $40,687.50. The reduction of this amount by 25% for cause equals a total attorney's fee of $30,515.62. Adding Cormier's costs and expenses of 32,394.38 equals a total award of $62,910.00.

As to the costs and expenses expended in the case, Cormier stated in his motion that his expenses were "$27,000 plus reimbursement to Intervenors for interest paid to Hancock Whitney Bank in the amount of $5,394.38." R. 183, p. 7.

While Cormier provided nothing to support this contention in the motion, his Reply brief included as Exhibit A-4 the "Transactions by Account" confirms the costs and expenses related to this case. R. 188-5.

Accordingly,

IT IS ORDERED that the Motion For Attorney's Fees Cost and Expenses of Intervenor filed by Errol Cormier and Errol L. Cormier APLC [Rec. Doc. 183] is GRANTED IN PART and Intervenors are entitled to recover $62,910.00 in attorney's fees and costs and expenses from Plaintiff.

SIGNED this 13th day of August, 2019 in Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE